Gilman *v.* Cunningham.

---

### JOHN L. GILMAN *versus* DANIEL CUNNINGHAM.

A., owning a mining "claim" in California, agreed with B. to work it with him, dividing equally between them what should be taken out of the claim. B., after receiving a certain amount of gold taken from the claim, left the country, no settlement between the parties having been made. Whether there were any outstanding debts against A. and B., growing out of the transaction, did not appear. — *Held,* that an action of assumpsit for money had and received, would lie to recover of B., A.'s share of the gold, or its proceeds in the hands of B. —

*Held,* also, that evidence in regard to the customs or usages prevailing among persons mining in company in California, and also as to the reputation of a place, as being dangerous and unsafe for persons known to have money, was inadmissible.

ON REPORT from *Nisi Prius,* MAY, J., presiding.

This was an action of ASSUMPSIT for money had and received.

The specification of the plaintiff's claim, filed in notice, was as follows:—

"Daniel Cunningham to John L. Gilman, Dr.

"For one half of the money received for the gold belonging to said Cunningham and Gilman, and sold by said Cunningham, and converted to his own use, in September, 1854."

The plea was the general issue, which was joined, with a brief statement that before the time of the commencement of this action, to wit, on the first of September, 1854, the defendant entered into co-partnership with the plaintiff, in the business of mining in California, which co-partnership had not been dissolved, and of which co-partnership business there had never been any final settlement; that the defendant had, at the date of the writ in this action, and still had, an equal

interest in a large amount of said co-partnership property in the possession of plaintiff, and upon a fair adjustment of the partnership business nothing would be due the plaintiff. That plaintiff has made no application for a dissolution of the partnership, and that defendant was about returning to California for the prosecution of the partnership business, when he was arrested on the writ in this action.

The plaintiff read the deposition of Ansel Olmstead, who testified that he resides in Sonora, Tuolumne county, California. Knew plaintiff in September, 1854, and the defendant from February, 1854, until he left California in the September or October following. The defendant showed him a gold specimen, which he said weighed 24 ounces, also some other specimens. This was at Adams & Co.'s banking house in Sonora. He also told him, at the same time, that he had a piece of gold at Columbia that weighed 64 ounces. He˘ said he dug the gold˘ on a claim at the head of Negro Gulch, near Columbia, county of Tuolumne; said he and his partner were offered $500 for one-third interest of the claim; said he had made some $2000 or $2500. He had this conversation in September, he thinks, and on Sunday previous to defendant's departure for the Atlantic States. The next Saturday deponent went up to the "claim," and found John L. Gilman at work in it. *"Cunningham left unbeknown to Gilman."*

The sentence in italics was objected to, as containing matter which could only be derived from plaintiff, but it was admitted by the presiding Judge.

Plaintiff read the deposition of Wm. S. Cooper, who testified that he resided. in Sonora. Previous to defendant's leaving California, had a conversation with him about gold dust, &c., the Sunday before he left. Defendant told him he had a large piece of gold, weighing some 24 ounces. Told deponent he had deposited with Wells, Fargo & Co. $1500 more. Said that and the gold dust he showed me belonged to him and John L. Gilman. Said he had $500 at D. O. Wells & Co.'s of his own. Defendant told me he and John L. Gilman mined together, near Columbia; that they were

mining together in August and September, 1854; that he and plaintiff owned the mining claim, and they were equal partners and worked the claim together; said he took charge of the gold dust as it came out of the claim, and deposited it at the banking house; that it was usual with miners for one to take charge of the gold dust. On cross-examination, deponent testified as to the personal moral habits of the plaintiff and defendant; also as to Caleb Gilman's keeping a drinking and gambling saloon.

Plaintiff read deposition of *Caleb Gilman*, who testified, among other things, that defendant told him he and plaintiff were in partnership in mining at a place called Negro Gulch, in August and September, 1854; went with defendant to the claim at that time. Defendant said he went to plaintiff's claim to try some of the dirt with a pan, and in doing so, found a lump of gold weighing nearly $1000. Said he then made an arrangement with plaintiff to go into partnership; that plaintiff was to have an equal interest in the lump he found, and that they were to divide equally the balance they should take out of the claim; that on arriving at the claim, he found plaintiff at work there; that defendant then showed him a certificate of deposit of Wells, Fargo & Co. for the $1000 lump; the certificate was in defendant's name; that they said they were going to deposit all they took out at Wells, Fargo & Co.'s, and when they had worked their claim out, and were ready to go home, they were going to make a division of the money and go home together.

. Plaintiff read deposition of Edward S. Hopkins, who testified that defendant, previous to the time he worked with plaintiff, had earned in mining $300. This was stated by deponent in answer to the interrogatory of plaintiff. "Please state what you know, if any thing, about plaintiff and defendant mining together — when it was, and where, and on what terms?" The answer was objected to by defendant as irresponsive and irrelevant; but was admitted by the presiding Judge. On cross-examination, deponent testified to the good

moral character and habits of plaintiff, and also that his credit was good.

Wm. Dangear, for plaintiff, deposed, that on the 4th Sept., 1854, defendant deposited with him, as agent of Wells, Fargo & Co., a piece of gold worth $1000; on the 26th, same month, another piece, valued at $500; that he afterwards bought of him two pieces for some $1400.

There was other testimony, as to the amount of gold received by defendant, and his converting it to his own use, which it is not deemed important to report.

Defendant read deposition of Warren Gilman, who produced a letter from plaintiff, who was his son, to him, dated Sept. 23, 1854. Among other things, the writer stated, in speaking of the claim in which plaintiff and defendant were working, that it cost a good deal to work it, as we have to pay $4 a day for a mule and cart, and $6 a day for water.

Defendant offered to prove by a witness, that Caleb Gilman, in 1854, was engaged in keeping a drinking and gambling house in California; that W. S. Cooper told him that plaintiff was in the habit of drinking and gambling; that Columbia had, in 1854, the reputation of being a bad and dangerous place, and unsafe for one having money; that it was the usage of miners to divide their gold every Sunday; *all which was excluded by the presiding Judge.*

Defendant offered to prove by another witness, that, by the usage and custom among miners in California, the purser of a mining company kept the joint earnings of the company, only during each week; that companies settled among themselves and divided the gold taken during each week, every Sunday; that the purser did not make deposits with the banker for the company; that when a large lump of gold was found by one of a company, the individuals of the company bid for it among· themselves, and if no one would buy it, the whole company went together to the banker's and disposed of it, and divided the proceeds; and that it was dangerous to have money about the person in Columbia, in 1854; and that persons having

money there did not usually allow it to be known; *all which was excluded by the presiding Judge.*

If, in the opinion of the Court, the action could not be maintained upon so much of the evidence admitted, as was legally admissible, the plaintiff was to become nonsuit. If the Court should be of opinion that the action is maintainable upon such evidence, and that any of the evidence which was material, offered by the defendant, and excluded by the Court, ought to have been received, a new trial was to be granted. If, in their opinion, the action could be maintained, and the evidence offered and excluded was inadmissible, then defendant was to be defaulted, the Court to determine for what sum judgment should be rendered.

*F. A. Pike,* for plaintiff.

1. Is the action maintainable? It is quite clear that it should be, unless there is some positive rule of law prohibiting it.

Whether the parties were technical partners or not, is deemed immaterial. That they called themselves so, does not settle the question. The circumstance that they operated together, each taking half of what they obtained, is not sufficient to make them partners. *There was no agreememt to share losses.*

2. But, admitting they were partners, this suit will settle all their affairs. There was no property left, as the " claim," if of any value, belonged to Gilman, after defendant left. By the terms of the partnership and the nature of the case, the partnership was dissolved when defendant left the country. There are no outstanding claims shown to exist against the concern. The expenses were undoubtedly paid from day to day.

3. No demand could be necessary, before commencement of suit.

4. In equity and good conscience, the defendant ought to pay the plaintiff his proportion of the money by him received. 2 Greenl. Ev. § 113.

*George W. Dyer,* for defendant.

1. If the parties were partners at the date of the writ, or had been partners, and the partnership remained unsettled, this action cannot be maintained. *Chase* v. *Garvin,* 19 Maine, 211. The plaintiff's own witnesses prove the partnership. The parties themselves called their business relations a partnership.

The partnership having been proved to exist, the presumption is, that it still exists, no evidence of dissolution having been produced.

There were no terms as to the time of dissolution. Leaving the country did not necessarily operate as a dissolution; the defendant might have intended to return.

2. The testimony that defendant left the country without the knowledge of plaintiff, was inadmissible, for the knowledge that he so left could be derived only from the plaintiff himself.

3. Was the partnership unsettled when this action was commenced?

This action was brought to enforce a settlement; and it is so avowed by the plaintiff.

4. The plaintiff's remedy is in equity, under the provisions of R. S., c. 96, § 10, or by action of account. ̧ *Chase* v. *Garvin,* 19 Maine, 211; Story on Partnership, c. 11.

The argument of plaintiff is based upon the law as it seems to be settled in *Williams* v. *Henshaw,* 11 Pick. 79, and in some later cases. We do not admit these cases to be law in Maine. *Fanning* v. *Chadwick,* 3 Pick. 420; *Shepard* v. *Richards,* 2 Gray, 424; R. S., c. 115, § 57.

5. There are partnership effects still existing. The "claim" is the joint property of the plaintiff and defendant.

6. The partnership being proved, the plaintiff must show there were no partnership debts subsisting. *Williams* v. *Henshaw,* 11 Pick. 79. Debts must have been incurred; so the evidence shows. *Williams* v. *Henshaw,* 12 Pick. 378.

7. A judgment in this case would be no bar to a suit for other moneys received by the defendant. Thus this suit will not settle all claims.

8. ,The parties here were not tenants in common, or part-owners. *Maguire* v. *Pingree*, 30 Maine, 508; *Shephard* v. *Richards*, 2 Gray, 424.

9. The plaintiff should have made a demand before suit. The property was rightfully in defendant's possession, and in such case, even though they were tenants in common, a demand should have been made.

10. The evidence excluded, particularly that in regard to usages in California, should have been admitted.

GOODENOW, J. — This is an action of assumpsit for money had and received, to recover the value of a certain amount of gold dust, or the proceeds thereof.

The position has been taken by the defendant, that this action cannot be maintained, because, as he alleges, he was a partner of the plaintiff at the time the dust was received; that the partnership has not been dissolved, and that there has been no adjustment of the affairs of the company.

From the evidence exhibited to us, we are led to the conclusion that the defendant has money in his hands, which, upon the principles of equity and good conscience, he was in duty bound to pay over to the plaintiff, before this suit was commenced.

We are not satisfied that the parties stood in such a relation to each other by their contract, that the plaintiff cannot enforce his claim by an action at law against the defendant. There is a difference between partners and part owners. These terms are not unfrequently misapplied. *Cessante ratione legis, cessat lex.*

We cannot perceive any equitable claims on the part of the defendant against the plaintiff, which might not have been fairly adjusted in the trial of this action, by an account in set-off. If the defendant has acted as agent of the plaintiff in disposing of the gold dust, or in taking care of the proceeds or investing the funds arising from the same, he may be entitled to a reasonable compensation.

We are of opinion that this action can be maintained; that

the evidence offered and excluded was inadmissible, and that a default must be entered. The plaintiff is entitled to recover one half of the money received for the gold belonging to said Cunningham and Gilman, and sold by said Cunningham and converted to his own use, with interest from the date of the writ; deducting a reasonable compensation for any services which the defendant may have rendered, in disposing of and taking care of the joint property. We are of opinion, that the precise amount of damages should be settled, upon · the grounds stated above, by the Judge who may preside at *Nisi Prius.* *Defendant defaulted.*

*Parties to be heard in damages.*

TENNEY, C. J., and HATHAWAY and MAY, J. J., concurred. APPLETON, J., dissented.